UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

X------------------------------------------------------------

MELODY M. LAROCCA,

                                    Plaintiff,

                                                            Civil Action
        -against-                                           No. 08 CIV 6274

                                                            Hon. Stephen C.
                                                            Robinson

COLLEN IP, INTELLECTUAL PROPERTY
LAW, P.C., and DONALD J. RANFT, as Aider
and Abettor,

                                    Defendants.

X------------------------------------------------------------

**Defendants' Memorandum of Law in Support of Their Motion Pursuant to**
**Fed. R. Civ. P. 12(b)(6) and 12(f)**

The Law Offices of Cushner &
Garvey, LLP
Attorneys for Defendants
*Collen IP, Intellectual Property Law,*
*P.C.*
*Donald J. Ranft, as Aider and Abettor*
155 White Plains Road, Suite 207
Tarrytown, New York 10591
Tel: (914) 524-9400 / Fax: (914) 524-0422

**On the Brief:**

**Lawrence A. Garvey (LG 9113)**

i

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................... ii

I. PRELIMINARY STATEMENT ........................................................... 1

II. BACKGROUND ............................................................................. 2

III. ARGUMENT .................................................................................. 3

A. PLAINTIFF FAILS TO ADEQUATELY PLEAD HER THIRD CAUSE OF ACTION INFLICTION OF EMOTIONAL DISTRESS ........................................... 3

    1. *Plaintiff's Claim of Intentional Infliction of Emotional Distress is Time Barred and Must Be Dismissed Pursuant to FED. R. CIV. P. 12(b)(6)* ............................... 3

    2. *Plaintiff's Claim of Intentional Infliction of Emotional Distress Must Be Dismissed Pursuant to FED. R. CIV. P. 12(b)(6) Because Plaintiff Fails to Plead Elements Necessary to State A Cause Of Action Upon Which Relief Can Be Granted* ............... 5

    3. *Plaintiff's Claim of Reckless Infliction of Emotional Distress is Time Barred and Must Be Dismissed Pursuant to FED. R. CIV. P. 12(b)(6)* ............................... 7

    4. *Plaintiff Fails to State a Claim Upon Which Relief Can Be Granted For Negligent Infliction of Emotional Distress Pursuant to FED. R. CIV. P. 12(b)(6) as Against all Defendants* ............................................................................. 7

IV. CONCLUSION ............................................................................... 9

# TABLE OF AUTHORITIES

PAGE

## FEDERAL CASES

Campoverde v. Sony Pictures Entertainment,
No. 01 Civ. 7775, 2002 WL 31163804 (S.D.N.Y. Sept. 30, 2002).............6, 8

Carroll v. Bayerische Landesbank,
150 F.Supp.2d 531 (2d Cir. 1999)..............................................5

Conboy v. AT&T Corp.,
241 F.3d 242 (2d Cir. 2001)....................................................6

Corrections Officers Benevolent Ass'n of Rockland County v. Kralik,
226 F.R.D. 185 (S.D.N.Y. 2005)...............................................10

Forbes v. Merrill Lynch, Fenner & Smith, Inc.,
957 F.Supp. 450 (S.D.N.Y. 1997).............................................4

Gordon v. Gettel,
No. 04 Civ. 0236, 2007 WL 2154193 (S.D.N.Y. June 22, 2007)..............5

Kelly v. Chase Manhattan Bank,
717 F.Supp. 227 (S.D.N.Y. 1989).............................................8

Klages v. Cohen,
7 F.R.D. 216 (E.D.N.Y. 1947)...............................................9, 10

Kounitz v. Slaaten,
901 F.Supp. 650 (S.D.N.Y. 1995).............................................10

Lipsky v. Commonwealth United Corp.,
551 F.2d 887 (N.Y. 1976)....................................................10

Lichtenstein v. Triarc Companies, Inc.,
No. 02 Civ. 2626, 2004 WL 1087263 (S.D.N.Y. May 14, 2004)...............5

Mariani v. Consolidated Edison Co. of New York, Inc.,

iii

982 F.Supp. 267 (S.D.N.Y. 1997) .................................................. 4

*Morrise v. U.S.,*
102 F.3d 693 (2d Cir. 1996) ...................................................... 8

*Neufeld v. Neufeld,*
910 F.Supp. 977 (S.D.N.Y. 1996) ............................................... 4

*Nevin v. Citibank, N.A.,*
107 F.Supp.2d 333 (S.D.N.Y. 2000) ............................................ 8

*NN&R, Inc. v. One Beacon Ins. Group,*
362 F.Supp.2d 514 (D.N.J. 2005) ................................................ 9

*Perks v. Town of Huntington,*
96 F.Supp.2d 222 (S.D.N.Y. 2000) ............................................. 5

*Ponticelli v. Zurich Am. Ins. Group,*
16 F.Supp.2d 414 (S.D.N.Y. 1998) ............................................. 6

*Rosen v. Texas Co.,*
161 F.Supp. 55 (S.D.N.Y. 1958) ................................................ 10

*Smith v. Local 819 I.B.T. Pension Plan,*
291 F.3d 236 (2d Cir. 2002) ...................................................... 4

*Sowemimo v. D.A.O.R. Sec., Inc.,*
43 F.Supp.2d 477 (S.D.N.Y. 1999) ............................................. 6

*Still v. DeBuono,*
101 F.3d 888 (2d Cir. 1996) ...................................................... 4

*Stulo v. Fleishman,*
164 F.3d 820 (2d Cir. 1999) ...................................................... 5

*USAlliance Federal Credit Union v. Cumis Ins. Soc., Inc.,*
346 F.Supp.2d 468 (S.D.N.Y. 2004) ........................................... 4

*Wahlstrom v. Metro-North Commuter R.R.,*
89 F.Supp.2d 506 (S.D.N.Y. 2000) ......................................... 5, 6

**STATE CASES**

*Dana v. Oak Park Marina, Inc.,*
230 A.D.2d 204, 660 N.Y.S.2d 906 (1997) .................................................7

*Dillon v. City of New York,*
261 A.D.2d 34, 704 N.Y.S.2d 1 (1st Dept. 1999) .......................................7, 8

*Freihofer v. Hearst Corp.,*
480 N.E.2d 349, 65 N.Y.2d 135 (1985) ......................................................6

*Howell v. New York Post Co., Inc.,*
612 N.E.2d 699, 81 N.Y.2d 115 (1993) ...................................................5, 6

*Ruggiero v. Contemporary Shells, Inc.,*
160 A.D.2d 986, 554 N.Y.S.2d 708 (1990) ................................................6

**FEDERAL STATUTES**

42 U.S.C. § 2000e, *et seq.* ........................................................................1

FED. R. CIV. P. 12(b)(6) ...................................................................passim

FED. R. CIV. P. 12(f) .........................................................................passim

**STATE STATUTES**

N.Y. EXEC. LAW § 296 (McKinney 2008) ...............................................1

1

Defendants Collen IP, Intellectual Property Law, P.C. ("Collen IP") and Donald J. Ranft,

as aider and abettor, ("Ranft", and collectively, with Collen IP, referred to as "defendants")

submit this memorandum of law in support of their motion to dismiss plaintiff's third cause of

action in her complaint (the "Complaint") entitled "Infliction of Emotional Distress" for failure

to state a claim upon which relief can be granted pursuant to FED. R. CIV. P. 12(b)(6).

## I. PRELIMINARY STATEMENT

Plaintiff has brought this suit against defendants seeking relief under Title VII, 42, U.S.C.

Section 2000e, *et seq*, and New York Executive Law § 296 based upon her various allegations of

being subject to sexual harassment in the workplace. In addition, plaintiff seeks damages against

defendants sounding in tort, namely under several New York State law theories of infliction of

emotional distress.

Plaintiff fails to recognize that even assuming, without conceding, intentional or reckless

infliction of emotional distress were present, relief can not be granted on either of these claims

because both are time barred. Under New York law, claims for intentional or reckless infliction

of emotional distress are governed by a *one year* statute of limitations. No tolls apply in the

instant case. The Complaint was filed on or about July 11, 2008. Plaintiff alleges in the

Complaint that she was constructively discharged on March 12, 2007 – indeed no factual

allegations are made for any conduct whatsoever after March 12, 2007. Accordingly, there are

no set of facts on which plaintiff could possibly argue that the emotional distress claims was

brought within one year from ANY conduct alleged in the complaint. Plaintiff's claim for

intentional infliction of emotional distress became time-barred on March 12, 2008 – nearly four months before she filed the Complaint.

Plaintiff's substantive claim for infliction of emotional distress, along with the facts plaintiff alleges to support it, simply fail to state a claim. It is well settled that although claims of sexual harassment may, in certain, limited circumstances sustain a claim for intentional infliction of emotional distress, the standard in New York is extremely high. In fact, as is discussed in more detail in Section III.A.2., *infra*, New York courts consistently hold that in order to satisfy the rigorous standard needed to sustain a claim for intentional infliction of emotional distress in cases sounding in sexual harassment, an allegation of sexual battery is paramount.

At the outset, therefore, defendants respectfully note to the Court that (1) plaintiff's fails to make out a claim for infliction of emotional distress (intentional, reckless or negligent); (2) plaintiff's claim for infliction of emotional distress is unavailing because plaintiff cannot, and has not, set forth the requisite factual basis necessary to sustain this claim, including, *inter alia*, plaintiff's failure and inability to allege sexual battery in connection with this claim; and (3) plaintiff has not and cannot set forth facts sufficient to overcome the high level of scrutiny with which New York law obliges courts to pass on such claims – *especially those alleged in connection with sexual harassment.*

## II. BACKGROUND

Defendant Collen IP is a law firm specializing in intellectual property practice.

Defendant Ranft is an employee of Collen IP. Defendant Ranft is a non-equity, non-managing

partner who, throughout the time in question, split his time working 40% from his home office in

Hershey, Pennsylvania, and 60% in New York.

Plaintiff Melody LaRocca was a part time employee who began her relationship with

defendants as a client of the firm in relation to her business of selling and designing jewelry. On

or about March 6, 2006 plaintiff was hired to work part time for defendant Collen IP, at $18.00

per hour. On June 6, 2006 she was given a raise of $22.00 per hour. Plaintiff resigned her

employment in March of 2007. Shortly after plaintiff resigned, Plaintiff filed a harassment

complaint, against Defendant Ranft, with the Ossining Village Police Department in connection

with an incident that Plaintiff claims occurred a full two months prior to her resignation. This

initial step by the Plaintiff resulted in a violation summons being issued to Defendant Ranft.

After multiple delays and adjournments in that matter trial is now scheduled for the end of

September, 2008. Shortly after the summons issued from Village Court of Ossining, plaintiff

filed a complaint with the New York State Division of Human Rights. No investigation or

determination was made on this complaint and a right to sue letter was issued to plaintiff. This

action followed.

# III. ARGUMENT

**A. PLAINTIFF'S ALLEGATIONS FAILS TO ESTABLISH A CAUSE OF ACTION INFLICTION OF EMOTIONAL DISTRESS**

**1. PLAINTIFF'S CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS IS TIME BARRED AND MUST BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(b)(6)**

A motion to dismiss pursuant to Rule 12(b)(6) should be granted where "it appears

beyond doubt that the plaintiff can prove no set of facts in support of its claim which would

4

entitle it to relief." *USAlliance Federal Credit Union v. Cumis Ins. Soc., Inc.*, 346 F. Supp. 2d

468, 469-70 (S.D.N.Y. 2004)) (quoting *Still v. DeBuono*, 101 F.3d 888, 91 (2d Cir. 1996)). While

the Court must accept as true the factual allegations in the Complaint and draw reasonable

inferences in favor of the non-moving party in evaluating a motion under Rule 12(b)(6),

"conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice

to prevent a motion to dismiss." *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 40 (2d

Cir. 2002) (internal quotations omitted).

The statute of limitations for intentional infliction of emotional distress is one year. *See*

*Forbes v. Merrill Lynch, Fenner & Smith, Inc.*, 957 F. Supp. 450, 455 (S.D.N.Y. 1997).

Plaintiff alleges that she was constructively discharged on March 12, 2007 (Compl. at

¶ 58). The Complaint was filed on or about July 11, 2008. Therefore, even assuming all

allegations made in the complaint are true, plaintiff alleges no set of facts upon which relief can

be granted. Plaintiff's claim for intentional infliction of emotional distress became time-barred

on March 12, 2008. This lawsuit was commenced nearly four months after the one-year statute

of limitations on plaintiff's intentional infliction of emotional distress claim expired.

The Complaint was filed on or about July 11, 2008. Plaintiff alleges in the Complaint

that she was constructively discharged on March 12, 2007 – indeed no factual allegations are

made for any conduct whatsoever after March 12, 2007. Accordingly, there are no set of facts on

which plaintiff could possibly argue that the emotional distress claims was brought within one

year from ANY conduct alleged in the complaint. Plaintiff's claim for intentional infliction of

emotional distress became time-barred on March 12, 2008 – nearly four months before she filed

the Complaint.

**2.** ***PLAINTIFF'S CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS MUST BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(B)(6) BECAUSE PLAINTIFF FAILS TO PLEAD ELEMENTS NECESSARY TO STATE A CAUSE OF ACTION UPON WHICH RELIEF CAN BE GRANTED***

Under New York law, "a claim of intentional infliction of emotional distress requires: (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Gorton v. Gettel*, No. 04 Civ. 0236, 2007 WL 2154193 at *3 (S.D.N.Y. June 22, 2007) (quoting *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir.1999)) (internal quotations omitted). Although claims of sexual harassment can sustain a claim for intentional infliction of emotional distress, "[t]he standard in New York for extreme and outrageous conduct is incredibly high." *Carroll v. Bayerische Landesbank*, 150 F.Supp.2d 531, 538 (S.D.N.Y. 2001); *see also Howell v. New York Post Co. Inc.* 81 N.Y.2d 115, 122, 612 N.E.2d 699 (1993) (standard for sustaining a claim for intentional infliction of emotional distress is "rigorous, and difficult to satisfy"). Moreover, Courts have held that to sustain a claim for intentional infliction of emotional distress in the sexual harassment context, sexual battery *should be alleged. See, e.g., Perks v. Town of Huntington*, 96 F.Supp.2d 222, 231 (S.D.N.Y. 2000) (*Lichtenstein v. Triarc Companies, Inc.*, No. 02 Civ. 2626, 2004 WL 1087263 (S.D.N.Y. May 14, 2004)); *Wahlstrom v. Metro-North Commuter R.R.*, 89 F.Supp.2d 506, 529 (S.D.N.Y. 2000); *Ponticelli v. Zurich Am. Ins. Group*, 16 F.Supp.2d 414, 441 (S.D.N.Y.1998) (*emphasis added*). Moreover, courts have held that that even a mere "garden variety" assault will not suffice; the battery alleged must be sexual in nature. *See Sowemimo v. D.A.O.R. Sec., Inc.*, 43

F.Supp.2d 477, 491 (S.D.N.Y. 1999) Indeed, "[c]ourts have observed that a plaintiff must allege sexual battery in order to survive . . . summary judgment in the sexual harassment context." *Id.* In the Complaint, plaintiff's allegations are that Ranft made unwelcome advances of a romantic or sexual manner. Even if those were taken as true, none of the alleged conduct even approached the level of conduct necessary to support this particular claim, which courts have characterized as so extreme and outrageous that it transcends the bounds of decency in a civilized society. *See Howell v. New York Post Co., Inc.*, 612 N.E.2d 699, 81 N.Y.2d 115, 122, (1993); *Freihofer v. Hearst Corp.*, 480 N.E.2d 349, 65 N.Y.2d 135 (1985); *Ruggiero v. Contemporary Shells, Inc.*, 160 A.D.2d 986, 987, 554 N.Y.S.2d 708 (1990).

Moreover, plaintiff does not allege that Ranft committed any sort of sexual battery in connection with her emotional distress claim based on her allegations of sexual harassment. *See Sowemimo*, 43 F.Supp.2d at 491. In addition to allegations of Ranft's verbal advances, plaintiff also must have alleged such conduct in order to make out a claim for intentional infliction of emotional distress. In any event, none of Ranft's alleged conduct contained in plaintiff's Complaint rises to the "incredibly high" level of extreme and outrageous behavior necessary to sustain a claim for intentional infliction of emotional distress. *Conboy v. AT&T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001); *Campoverde v. Sony Pictures Entertainment*, No. 01 Civ. 7775, 2002 WL 31163804 (S.D.N.Y. Sept. 30, 2002) (conduct must be so outrageous and extreme "as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.").

Not only did the statute of limitations expire on any intentional infliction of emotional distress claim that plaintiff alleges, but because plaintiff did not and cannot include an allegation of sexual battery *in conjunction with* Ranft's verbal advances, her cause of action sounding in

7

intentional infliction of emotional distress must be dismissed pursuant to FED. R. CIV. P. 12(b)(6).

3.   ***PLAINTIFF'S CLAIM OF RECKLESS INFLICTION OF EMOTIONAL DISTRESS IS TIME BARRED AND MUST BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(B)(6)***

Since reckless infliction of emotional distress is encompassed within the tort of intentional infliction of emotional distress in New York, it is governed by the same one year statute of limitations. *Dana v. Oak Park Marina, Inc.,* 230 A.D.2d 204, 210, 660 N.Y.S.2d 906 (1997).

As stated in above, plaintiff alleges that she was "constructively discharged" on March 12, 2007 (Complaint at ¶ 58). The Complaint was filed on or about July 11, 2008. Therefore, plaintiff's claim for reckless infliction of emotional distress became time-barred on March 12, 2008, and the present suit commenced nearly four months after the one-year statute of limitations expired.

Accordingly, plaintiff's claim for reckless infliction of emotional distress is time barred and must be dismissed pursuant to FED. R. CIV. P. 12(b)(6).

4.   ***PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS PURSUANT TO FED. R. CIV. P. 12(B)(6) AS AGAINST ALL DEFENDANTS***

It is extremely difficult in New York to sustain a claim for negligent infliction of emotional distress. A plaintiff must allege conduct that was "so outrageous and extreme as to support a claim for emotional distress" (the same standard used in intentional infliction of

emotional distress, *supra*). *Dillon v. City of New York*, 261 A.D.2d 34, 704 N.Y.S.2d 1 (1st Dept. 1999). In addition, the parameters of the negligent infliction of emotional distress tort are extremely narrow. *See Nevin v. Citibank, N.A.*, 107 F.Supp.2d 333, 346 (S.D.N.Y. 2000). New York courts have only recognized this tort in very limited circumstances, namely, where plaintiff suffered *physical trauma* or was caused to *fear for her immediate physical safety*, in situations where plaintiff herself was in Justice Cardozo's "zone of danger," when an *immediate family* member was killed or injured, when a plaintiff was wrongly notified of a near relative's death, or when a deceased family member's remains were improperly handled – *all as the result of the negligent conduct of the defendant. See Campoverde*, 2002 WL 31163804.

As with all negligence claims, a plaintiff must, as an absolute prerequisite to bringing such a tort claim, aver that the defendant owed *that plaintiff* a duty that was specific to her. *Mortise v. U.S.*, 102 F.3d 693, 696 (2d Cir. 1996). In this case, there was no duty owed to the plaintiff, and no such duty has even been alleged by the Plaintiff. *See Kelly v. Chase Manhattan Bank*, 717 F. Supp. 227, 235 (S.D.N.Y. 1989). Plaintiff does not even attempt to allege that any defendant breached a duty owed to plaintiff.

Plaintiff has failed to even remotely establish that she suffered an unreasonable endangerment to her physical safety which was the result of anyone's negligent conduct. Further, based upon the allegations in the Complaint, any reasonable objective inquiry turning on whether plaintiff's physical safety was actually was endangered will result in the conclusion that it was not. *Campoverde*, 2002 WL 31163804.

Additionally, in plaintiff's third cause of action (simply entitled infliction of emotional distress) plaintiff combines all three New York State theories of law (intentional, reckless and negligence) into a single cause of action with the apparent hope that the Court will fashion a

**Electronically Filed**

single cause, when in fact all three must fail. Plaintiff's infliction of emotional distress cause of action compounds three distinct causes of action, against two different defendants, into one cause of action. The confusing and ultimately deficient claim that plaintiff tries to plead in her third cause of action does not set forth the basis to support any claim for infliction of emotional distress, whether intentional, reckless or negligent, let alone against any particular defendant. Plaintiff's "third cause of action" must be dismissed under FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## IV. CONCLUSION

Plaintiffs have failed to state a cause of action, and moreover, their alleged actions are clearly time barred. Defendants Colleen IF and Donald J. Ranft respectfully request an order granting defendants' motion to dismiss plaintiff's third cause of action for infliction of emotional distress" in its entirety due to the expiration of the statute of limitations and plaintiff's failure to state a claim upon which relief can be granted pursuant to FED. R. CIV. P. 12(b)(6) and an order awarding defendants such other and further relief as may be just and proper.

**Dated:**    Tarrytown, New York
            August 25, 2008

Respectfully submitted,

**Law Offices of Cushner & Garvey, LLP**

By:  _/S/_____
    **Lawrence A. Garvey (LG9113)**
    Attorneys for Defendants
    155 White Plains Road, Suite 207
    Tarrytown, New York 10591
    (914) 524-9400 / f: (914) 524-0422

**To:**

Mr. Kyle McGovern
Lyons McGovern LLP
Attorney for Plaintiff
16 New Broadway
Sleepy Hallow, New York 10591
(914) 631-1336

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x

MELODY M. LAROCCA

    Plaintiff,

-against-

COLLEN IP, INTELLECTUAL PROPERTY
LAW, P.C., and DONALD J. RANFT, as Aider
and Abettor,

    Defendants.

------------------------------------x

**COMPLAINT**

Index No.

**JURY TRIAL DEMANDED**

FILED
U.S. DISTRICT COURT
2008 JUL 11 A 10:05
S.D. OF N.Y.W.P.

**08 CIV. 6274**

**JUDGE ROBINSON**

Plaintiff, MELODY M. LAROCCA, by her attorneys, Lyons McGovern, LLP, for her complaint against the defendants herein, respectfully alleges:

## NATURE OF ACTION

1. This is an action for deprivations, of Plaintiff, MELODY M. LAROCCA'S (hereinafter "MS. LAROCCA") rights guaranteed her by reason of Title VII, 42, U.S.C. Section 2000e, et seq., and related state law claims.

## PARTIES

2. MS. LAROCCA, is a citizen of the United States and resides in Cortlandt Manor, New York.

3. Defendant COLLEN IP, INTELLECTUAL PROPERTY LAW, P.C. (hereinafter "COLLEN IP") has its principal place of business at 80 South Highland Avenue, Ossining, New York, Westchester County. Upon information and belief, COLLEN IP is a professional corporation, existing under the laws of the State of New York.

4. Upon information and belief, at all times relevant to the instant matter, Defendant DONALD J. RANFT (hereinafter "RANFT"), who is being sued personally and in his individual capacity, was a managing partner in COLLEN IP. Upon information and belief, Defendant RANFT is a resident of Hershey, Pennsylvania.

LITDOCS:478858.3

## JURISDICTION AND VENUE

5. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331, 1132 and 1343 and supplemental jurisdiction pursuant to 28 U.S.C. §1367. Jurisdiction is premised upon the existence of diversity of citizenship, a federal question and deprivations of federally protected rights. This is an action for monetary damages, a declaratory judgment, permanent injunctive relief, and reasonable attorneys fees and costs. This action arises under Title VII, 42 U.S.C. §2000e. MS. LAROCCA'S state law claims are interposed in accordance with the Court's pendent jurisdiction.

6. With respect to MS. LAROCCA'S Title VII claims, on or about May 21, 2007, she filed a Charge of Discrimination with the New York State Division of Human Rights, alleging discrimination premised upon gender and sexual harassment. More than one hundred and eighty days have elapsed since that filing and a Notice of Right to Sue has been issued by the Equal Employment Opportunity Commission ("EEOC").

7. Venue is proper in this district pursuant to 28 U.S.C. §1391 because many of the material facts and injuries alleged herein occurred within the Northern Counties of the Southern District of New York. Such acts include practices and conduct violative of Title VII. In addition, venue is proper in this district pursuant to 28 U.S.C. §1391 because defendant's principal place of business is in this judicial district.

## FACTS

8. MS. LAROCCA, a female, was hired by the COLLEN IP a law firm that specializes in intellectual property law, as a part-time paralegal in February 2006. MS. LAROCCA was initially assigned as a litigation paralegal responsible for providing paralegal support to the litigation attorneys in the firm.

LITDOCS:478358.3

-3-

9.    MS. LAROCCA began her employment with COLLEN IP as a part-time paralegal. MS. LAROCCA owned a jewelry business. When MS. LAROCCA was hired by COLLEN IP, RANFT, the hiring partner for COLLEN IP, told MS. LAROCCA that he would discuss a transition to a full time position towards the end of 2006 or early 2007.

10.    During the course of her employment at COLLEN IP, MS. LAROCCA was subjected to repeated, intentional and malicious sexual harassment and intimidation by RANFT, a supervising and managing partner at COLLEN IP, including but not limited to: being subjected to continual and repeated comments and inquiries and (both verbally and by e-mail) as to her personal life and sexual activity; repeated and continual sexual and inappropriate comments about her appearance; denied advancement in COLLEN IP because MS. LAROCCA refused to meet with RANFT outside of the office; and subjected to requests by RANFT to have sex with him.

11.    RANFT through his position as managing partner of COLLEN IP, engaged in a course of conduct to isolate, sexually harass and intimidate MS. LAROCCA during her employment at COLLEN IP despite MS. LAROCCA'S continual requests to stop. RANFT utilized his position and authority as managing partner of COLLEN IP in order to obtain sexual relations with MS. LAROCCA. RANFT utilized his actual and apparent authority over the COLLEN IP employees, including MS. LAROCCA to carry out the harassment.

12.    COLLEN IP and its management knew about RANFT'S discriminatory and sexually harassing behavior, or should have known about it. Upon information and belief, prior to the events referred to in the complaint, complaints of harassment were made against RANFT.

13.    As the managing partner of COLLEN IP, RANFT was responsible for the day to day operations of COLLEN IP, including personnel decisions, IT support, and office management. In addition, RANFT handles all of the patent prosecution work for COLLEN IP. MS. LAROCCA'S initial assignment with COLLEN IP was to provide legal support to the litigation attorneys at the firm.

14.     From the very beginning of employment, and continuing until her constructive discharge, RANFT methodically and continuously sexually harassed MS. LAROCCA and created an extreme hostile environment. Despite the fact that MS. LAROCCA did not work directly with RANFT, RANFT would constantly telephone or e-mail MS. LAROCCA requesting MS. LAROCCA meet with him in his office. RANFT would always pass by MS. LAROCCA'S work station and try and interact with MS. LAROCCA. The oddity and frequency of RANFT'S telephone calls and visits by MS. LAROCCA'S work station and the overall attention he gave MS. LAROCCA was also recognized by MS. LAROCCA'S co-workers.

15.     In April and/or May 2006, COLLEN IP decided to lease a temporary location across the street from its principal building. One of the attorneys moving over there requested that MS. LAROCCA go with over to the new building - RANFT expressed extreme disappointment to MS. LAROCCA and told MS. LAROCCA that the space was temporary and that he had the power to reconsider seating arrangements at anytime.

16.     MS. LAROCCA sought to end the hostile environment being created by RANFT by responding to him, in words or substance: leave me alone. Other times when RANFT addressed MS. LAROCCA in a harassing manner, MS. LAROCCA, in order to try and end the hostile environment would not respond.

17.     MS. LAROCCA would be continuously summoned by RANFT to his office where RANFT would have all of the lights off in the office with the shades drawn and instruct MS. LAROCCA to shut the door. MS. LAROCCA was never comfortable with the door being closed and having to be alone with RANFT. When MS. LAROCCA would ask RANFT what he wanted he would say "I missed you." MS. LAROCCA became increasingly uncomfortable with RANFT and as time went on RANFT'S subtle sexual gestures and remarks became more frequent, overt and inappropriate.

18.     RANFT continued his sexual harassment of MS. LAROCCA notwithstanding her repeated protestations.

LITDOCS:473558.3

19.     In and around June 2006, without reason or explanation, RANFT decided to assign MS. LAROCCA to patent prosecution to work directly with him.  When MS. LAROCCA told RANFT said that she was more comfortable in the litigation practice area and preferred working in the litigation.  RANFT said he did not care.  MS. LAROCCA was assigned to work with him in the patent prosecutions and to work with the litigation team.

20.     In addition, MS. LAROCCA also took over the role of back up docketing clerk for the firm.  Once MS. LAROCCA took over the back up clerk position, RANFT without reason or explanations insisted that MS. LAROCCA meet with RANFT in person several times a week.  MS. LAROCCA would not have had taken the back up docketing clerk role if she knew RANFT was going to change the requirements that forced her to meet with RANFT on such a continual and regular basis.

21.     During the Tuesday and Thursday meetings RANFT discussed personal matters and problems he was having with his wife, including claims that his wife had mental illness.  RANFT'S comments and actions during these meeting became more inappropriate and vulgar despite MS. LAROCCA'S requests to stop and keep their interaction professional.

22.     During an August 2006 meeting RANFT asked MS. LAROCCA about her relationship with her husband and then proceeded to state to MS. LAROCCA "my wife will not let me touch her sexually."  MS. LAROCCA told RANFT his comments were not appropriate and asked RANFT to stop.  RANFT did not.

23.     During meetings in late August 2006, RANFT said to MS. LAROCCA "you look beautiful" and another time stated to MS. LAROCCA "out of all of the women in the office you have a perfect body."  MS. LAROCCA was becoming more and more afraid of RANFT given the boldness and sexual nature of the comments.

24.     MS. LAROCCA did not know what to do.  MS. LAROCCA felt powerless to tell anyone of RANFT'S continuing sexual harassment, particularly given RANFT'S status

-5-

as the managing partner of COLLEN IP. MS. LAROCCA was further worried that because RANFT and the founding members Jane and Jess Collen were first cousins.

25. COLLEN IP did not have any sexual harassment policies or procedures for MS. LAROCCA to utilize in order to complain about RANFT'S actions. Instead COLLEN IP assigned RANFT with the responsibility to handle personnel and human resource issues.

26. In late August 2006, in hopes of getting away from RANFT without jeopardizing her employment, MS. LAROCCA told a litigation attorney she was working for that she was not comfortable working with RANFT (without providing details). Upon information and belief, the litigation attorney (also a subordinate to RANFT) told RANFT that MS. LAROCCA was needed on the litigation team and could RANFT stop pulling MS. LAROCCA off their cases to work with RANFT. RANFT refused and told the litigation attorney that "he calls the shots."

27. MS. LAROCCA was forced to continue to work directly with RANFT. RANFT further reminded MS. LAROCCA that he could always move MS. LAROCCA back to his building.

28. In September 2006 during a meeting RANFT again began talking about his relationship with his wife and about the infrequency of the sex he was having with her. RANFT asked MS. LAROCCA about her relationship with her husband, saying "your husband must not be there for you because you work so many jobs." RANFT callously asked MS. LAROCCA if sex with her husband was pleasing. MS. LAROCCA was so upset by this comment that she began to cry in RANFT'S office.

29. MS. LAROCCA told RANFT to take her off patent prosecution or she would be forced to quit." RANFT offered an apology and tried to hug MS. LAROCCA, saying "I cannot stop thinking about you." MS. LAROCCA was terrified. RANFT never agreed to take MS. LAROCCA off patent prosecution, nevertheless MS. LAROCCA stopped working on patent prosecutions.

LITDOCS:478556.3

30.    MS. LAROCCA thought that this incident by RANFT would be the last and given her return exclusively to litigation matter. MS. LAROCCA thought the harassment would stop. MS. LAROCCA was wrong. RANFT continued to telephone her and send inappropriate e-mails to her, even when RANFT was working out of his home in Pennsylvania.

31.    In October 2006, RANFT told MS. LAROCCA that pursuant to their initial agreement there was still a possibility that COLLEN IP could offer MS. LAROCCA a full time position. In need of additional money and with the hopes and expectations that RANFT would back off and leave her alone, MS. LAROCCA told RANFT that she would be interested. RANFT stated that he would only discuss the full time job with MS. LAROCCA if MS. LAROCCA went to lunch with him out of the office. MS. LAROCCA told RANFT she would not meet him outside of the office.

32.    Again in November 2006, RANFT asked MS. LAROCCA if she was interested in the full time position. RANFT stated again that he would only discuss the full time position if MS. LAROCCA went out to dinner or lunch with him. MS. LAROCCA told him she would not meet with him outside the office. RANFT became frustrated and agitated towards her. RANFT would say things like "we belong together" or "why didn't I meet you 14 years ago."

33.    Based upon RANFT'S insistence that MS. LAROCCA have lunch or dinner with him outside of the office and MS. LAROCCA's refusal, MS. LAROCCA never had the opportunity to hold a full time position at COLLEN IP.

34.    RANFT'S sexual advances became almost an every day occurrence and RANFT refused to take no for an answer. RANFT summoned MS. LAROCCA to his office under the pretense of office supply issues or docketing duties and make comments about MS. LAROCCA'S clothing and body. RANFT would lean over MS. LAROCCA and say "Why don't you show some cleavage? You don't like your cleavage? There isn't anything wrong with it." MS. LAROCCA felt demeaned, humiliated and frightened.

LITDOCS:478368.8

35.    MS. LAROCCA would arrive to the office early and often be the only one in her office.    RANFT would send MS. LAROCCA e-mails "Are you alone? How are you feeling? Are you ignoring me?" MS. LAROCCA felt threatened by these e-mails. In addition, there were personal items missing from MS. LAROCCA'S desk which she was certain were taken by RANFT.

36.    There was also another incident where MS. LAROCCA and a few other female co-workers noticed someone had been tampering with the lighting in the women's bathroom.    All of the women suspected it was RANFT that tampered with the women's bathroom.    Despite their request, COLLEN IP refused to call the police to investigate or have the locks changed.

37.    During the last week of December 2006 MS. LAROCCA was out of the office due to an agreed upon time off for her jewelry business.

38.    When MS. LAROCCA returned to the office in January 2007 RANFT summoned her to RANFT'S office and asked how she was doing. RANFT then said to MS. LAROCCA "we are both adults - get in your car and drive, I'll follow. Stop at a place of your choice, I'll pay - I know you don't want to have sex with me. I'll message you from head to toe and when you can't take it anymore it'll stop - I won't allow you to have sexual intercourse with me."

39.    MS. LAROCCA told RANFT he was out of line and if he did not stop she was going to do something about it. RANFT became angry and explosive throwing papers around in his office. MS. LAROCCA was terrified. RANFT said to MS. LAROCCA "we are both adults let's get in your car and go." Then in an angry and sadistic tone RANFT stated to MS. LAROCCA"I know you don't want to have sex with me and once I get you to that point I will not let you." MS. LAROCCA started to cry.

40.    As MS. LAROCCA was crying, RANFT said to MS. LAROCCA "let me give you a hug." RANFT and stated to MS. LAROCCA, "I only think of you when I have sex with my wife." RANFT physically grabbed MS. LAROCCA and tried to hug her.    MS.

-8-

LITDOCS:478856.3

LAROCCA immediately pulled away from RANFT and fell to the ground. RANFT'S response to MS. LAROCCA was "I knew I made you weak in the knees" with a sadistic look in his face. MS. LAROCCA ran out of RANFT'S office.

41.    MS. LAROCCA was terrified and knew that if she did not do something RANFT was going to hurt her. The following Monday MS. LAROCCA tried to meet with Jess Collen one of the founding partners of the COLLEN IP to let him know about the harassment and intimidation she was being subjected to by RANFT. Jess Collen was not in the office.

42.    MS. LAROCCA decided to tell a female co-worker about all of the incidents and the co-worker said she was not surprised. The co-worker said RANFT harasses all of the women in the office and it is known throughout the office that RANFT targets women.

43.    The next morning the same co-worker asked MS. LAROCCA to help her with something in the attic file room. In order to access the attic file room, one had to pass by RANFT'S office. As MS. LAROCCA and the co-worker passed by RANFT'S office RANFT ordered MS. LAROCCA into his office. When MS. LAROCCA walked into RANFT'S office she made sure she left the door open. RANFT stated to MS. LAROCCA "be smart - be smart and consider my offer." MS. LAROCCA could not believe what she was hearing and knew that there would be nothing to stop RANFT. MS. LAROCCA was frightened and in utter shock. When the co-worker walked into RANFT'S office she could not believe the look on MS. LAROCCA'S face, a look the co-worker described as one of a "deer in headlights."

44.    The next day MS. LAROCCA met with her supervising litigation attorney and told her everything that RANFT had done to her. MS. LAROCCA told her supervising attorney that she was afraid to be near RANFT.

45.    Again, there was no sexual harassment policy at COLLEN IP for MS. LAROCCA or the supervising litigation attorney to refer to or follow.

46.    The supervising litigation attorney suggested that MS. LAROCCA bring these allegations to the Jane Collen's attention, another founding member of the firm. MS.

-9-

LITDOCS:678343.3

LAROCCA disagreed because Jane Collen and RANFT are first cousins and MS. LAROCCA knew that Jane Collen would do nothing to RANFT.

47.    MS. LAROCCA and the supervising attorney meet with Jess Collen in his office and MS. LAROCCA told him everything. There were no complaint procedures or policies at COLLEN IP to be followed or implemented. Jess Collen did not follow any policy or procedure.

48.    Instead of undertaking an independent investigation about MS. LAROCCA'S allegations against RANFT, Jess Collen set up a conference call with RANFT with her and the supervising litigation attorney in the room. MS. LAROCCA could not believe Jess Collen was doing this to her – even the supervising litigation attorney was concerned with his approach. MS. LAROCCA was humiliated and now terrified that RANFT would retaliate against her.

49.    Jess Collen then requested Jane Collen to come into the office to discuss MS. LAROCCA'S allegations she stated in an "I could not be bothered tone" that it was probably nothing and told Jess Collen to handle it.

50.    During the telephone conference RANFT did not deny his vulgar and harassing action towards her.

51.    Later, MS. LAROCCA provided Jess Collen copies of the e-mails she received from RANFT further evidencing the sexual harassment she was subjected to by RANFT.

52.    Despite this clear evidence of sexual harassment and intimidation by RANFT Jess Collen and COLLEN IP did nothing to RANFT.

53.    MS. LAROCCA told Jess Collen that she was afraid of RANFT. Rather than take action against RANFT Jess Collen suggested MS. LAROCCA to take a week off. MS. LAROCCA told Jess Collen that it should be RANFT that should be sent home not her. Jess Collen's response was that RANFT was too important to the firm to just send home.

-10-

## AS AND FOR A FIRST CAUSE OF ACTION
### (Sex Discrimination Under Title VII)

54.    Incredibly, the very next day MS. LAROCCA was in the office and first thing in the morning and she was copied on a firm wide e-mail from RANFT. RANFT was not disciplined and returned to work "business as usual."

55.    Based upon COLLEN IF's failure to take action against RANFT, MS. LAROCCA was afraid RANFT would be further empowered to harass her and other women in the office without consequence.

56.    MS. LAROCCA confronted Jess Collen about his inaction and told him she did not want RANFT to have any access to her including access to her work area. MS. LAROCCA asked Jess Collen to change the lock and code to the building but he refused.

57.    It was at this point MS. LAROCCA knew COLLEN IF was going to do nothing to protect her and RANFT would be free to further harass, threaten and physically hurt MS. LAROCCA.

58.    On March 12, 2007, MS. LAROCCA had no other choice but to leave COLLEN IF to get away from RANFT and RANFT'S continuing sexual harassment.

59.    Upon information and belief, COLLEN IF knew RANFT harassed other women in the office, including MS. LAROCCA, but chose to ignore it given RANFT'S position with the firm and his alleged importance to the business of the firm. MS. LAROCCA was told by a former co-worker that other women in the firm have been harassed by RANFT and COLLEN IF was aware of his threat to other women in the office.

60.    Because COLLEN IF failed to take action against RANFT and order to protect herself from RANFT, on March 12, 2007, MS. LAROCCA filed a complaint with the Village of Ossining police department. RANFT was charged by the Westchester County District Attorney's Office with Harassment in the Second Degree. The criminal action is still pending.

LITDOCS/678333.3

-11-

61.    The MS. LAROCCA repeats the allegations of paragraphs one through 60 of her Complaint, and incorporates them by reference as if fully set forth herein.

62.    By the acts and practices described above, including but not limited to creating a hostile work environment because of her sex, conditioning advancement in the COLLEN IP based upon sexual favors, and failing to act upon MS. LAROCCA'S complaints of discrimination, Defendant COLLEN IP discriminated against MS. LAROCCA in the terms and conditions of her employment in violation of Title VII, 42 U.S.C. § 2000e, et seq.

63.    Defendant COLLEN IP is liable as Plaintiff's "employer" under Title VII.

64.    MS. LAROCCA is now suffering and will continue to suffer irreparable injury and monetary damages as a result of COLLEN IP'S discriminatory acts.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Sex Discrimination Under New York Executive Law)

65.    The MS. LAROCCA repeats the allegations of paragraphs one through 64 of her Complaint, and incorporates them by reference as if fully set forth herein.

66.    By the acts and practices described above, including but not limited to creating a hostile work environment because of her sex, conditioning advancement in the COLLEN IP based upon sexual favors, and failing to act upon MS. LAROCCA'S complaints of discrimination, Defendants COLLEN IP and RANFT discriminated against MS. LAROCCA in the terms and conditions of her employment in violation of New York Executive Law § 296, et seq.

67.    Defendant COLLEN IP is liable Plaintiff's "employer" under New York Executive Law.

68.    Defendant RANFT is liable under New York Executive Law as an Aider and Abettor of the discrimination against MS. LAROCCA.

69.    MS. LAROCCA is now suffering and will continue to suffer irreparable injury and monetary damages as a result of COLLEN IP'S and RANFT'S discriminatory acts.

LITDOCS:478898.3

-13-

## AS AND FOR A THIRD CAUSE OF ACTION
### (Infliction of Emotional Distress)

70.   The MS. LAROCCA repeats the allegations of paragraphs one through 69 of her Complaint, and incorporates them by reference as if fully set forth herein.

71.   By the acts and practices described above, Defendants COLLEN IP and RANFT have caused MS. LAROCCA to suffer severe and permanent emotional and psychic injury.

72.   MS. LAROCCA has been caused to suffer and continues to suffer from severe and disabling shock, distress, anguish, sorrow, depression and other loss of enjoyment of life.

73.   The aforesaid emotional and/or psychological injuries sustained by MS. LAROCCA were wholly caused by reason of the intentional, reckless and/or negligent acts of Defendants COLLEN IP and RANFT as described herein.

74.   Defendants COLLEN IP and RANFT acted maliciously and with the specific intent to oppress and harm MS. LAROCCA and/or with reckless disregard of the consequences of their actions, is now suffering and will continue to suffer irreparable injury and monetary damages.

## JURY TRIAL DEMANDED

75.   MS. LAROCCA hereby demands a trial by jury on all claims and issues so triable.

WHEREFORE, MS. LAROCCA respectfully requests that this Court will:

(a)   Declare the acts and practices complained herein are in violation of Title VII and New York State Executive Law § 296 et seq.;

(b)   Grant as against each defendant such front pay, back wages, compensatory damages and damages for her mental anguish and humiliation as the jury may award;

- 14 -

(c)     Imposing upon the Defendants such punitive damages as the jury may

grant;

(d)     An award of attorneys fees, costs and disbursements; and

(e)     Such other and further relief as the Court deems just and proper.

Dated: July 10, 2002
       Sleepy Hollow, New York

                                        LYONS McGOVERN, LLP

                                        By: _____
                                            Eric C. McGovern (KM 3373)
                                            16 New Broadway
                                            Sleepy Hollow, New York 10591
                                            (914) 631-1336

                                        Attorneys for Plaintiff